**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Nicolas Likins, | Case No.: 2:24-cv-02398-JAD-NJK |
| Plaintiff | |
| v. | **Order Granting Defendants' Motion for Summary Judgment on Federal Claims and Remanding State-law Claims Back to State Court** |
| Mike Azcunaga, et al., | |
| Defendants | [ECF No. 9] |

North Las Vegas police officers Mike Azcunaga and Fernando Herrera arrested truck driver Nicolas Likins on suspicion of driving under the influence. Although the officers maintain that they thought Likins smelled of alcohol and appeared intoxicated, subsequent lab tests showed no substances in his system. Nevertheless, the City of North Las Vegas charged Likins with a DUI before ultimately dismissing the case several months later. So Likins sues the North Las Vegas Police Department, the City of North Las Vegas, and the officers for constitutional violations, theorizing that the evidence of his intoxication was fabricated in violation of the Fourteenth Amendment, and the City and its police department must maintain unconstitutional policies and practices if this arrest and prosecution were allowed to happen. Likins also asserts state-law claims for malicious prosecution, false imprisonment, negligence, and a violation of the Nevada Constitution.

The defendants move for summary judgment on all claims. Because I find that the record shows no reasonable dispute that the officers had probable cause to arrest Likins without the alcohol-odor evidence and that the purportedly fabricated evidence did not proximately cause the arrest, the officers are entitled to summary judgment on the Fourteenth Amendment claim against them. And while Likins points to customs and practices he claims the City and its police

department violated in arresting and prosecuting him, this single-incident evidence is insufficient to establish the pattern required to hold a municipality liable under the law.  So I grant the defendants summary judgment on these federal claims, and given that no federal claim remains, I remand the remaining state-law claims back to state court and close this case.

**Background**

Officer Mike Azcunaga responded to an early morning accident involving a semi-truck driven by Nicolas Likins and another car.[1]  Officer Azcunaga briefly spoke with Likins after arriving at the scene.[2]  Before stepping away, Officer Azcunaga told Likins that he could move the truck out of the roadway onto the shoulder.[3]

**A.      Officers report to an accident involving Likins and suspect that he's impaired.**

Officer Herrera then arrived and spoke with Likins regarding the accident.[4]  Officer Herrera advised Officer Azcunaga that he thought that Likins's speech was badly slurred, that his eyes were bloodshot, and that he smelled of alcohol—observations that the officers later recorded in their police report.[5]  Officer Herrera also told Officer Azcunaga that Likins might just talk like that and that they should have him perform field-sobriety tests to assure that he was not impaired.[6]  Likins denied that he was intoxicated when the officers confronted him about it.[7]

---

[1] ECF No. 9-1 at 2–3.

[2] ECF No. 10 at 3:50-6:12. (Azcunaga body-worn camera (BWC)) (manually filed with the court).

[3] *Id.*

[4] ECF No. 10 at 1:00-3:40 (Herrera BWC) (manually filed with the court).

[5] ECF No. 10 at 10:45–11:37 (Azcunaga BWC); ECF No. 9-6 at 6–7 (police report).

[6] ECF No. 10 at 10:45–10:52. (Azcunaga BWC).

[7] *Id.*; ECF No. 9-6 at 6–7

The officers told Likins that because of his bloodshot eyes and slurred speech they wanted him to undergo field-sobriety tests.[8] Likins agreed to the tests.[9] The officers administered the vertical-gaze-nystagmus, horizontal-gaze-nystagmus, lack-of-convergence, walk-and-turn, and one-leg-stand tests.[10] In the officers' bodycam footage, Likins appears to struggle to move his legs and repeatedly swore during the walk-and-turn test, and he also failed to hold up his leg for more than a few seconds during the one-leg-stand test.[11] According to the police report, the officers determined that Likins showed several signs of intoxication based on the horizontal-gaze-nystagmus test, and he did not satisfactorily perform the one-leg-stand and walk-and-turn tests.[12] Likins attributed his poor performance to a sore hamstring.[13] The officers then muted their body cameras and discussed for a few minutes.[14] After this discussion, they arrested Likins for driving under the influence in violation of Nevada Revised Statutes §§ 484C.120 and 484C.110.[15]

**B.      Likins gets prosecuted for DUI despite exculpatory test results.**

After Likins was arrested, he agreed to a blood draw to test his blood-alcohol level.[16] Likins was taken to detention and released later that day.[17] Three weeks later, the North Las

---

[8] ECF No. 10 at 14:00–14:25 (Azcunaga BWC).

[9] *Id.* at 14:00–14:25.

[10] *Id.* at 14:00–30:54.

[11] *Id.* at 22:05–30:54.

[12] ECF No. 9-6 at 6–7.

[13] ECF No. 10 at 25:05–25:15 (Azcunaga BWC).

[14] ECF No. 10 at 24:24–29:22 (Herrera BWC).

[15] ECF No. 9-6 at 7.

[16] ECF No. 10 at 34:55-36:05; 38:20-35 (Herrera BWC).

[17] ECF No. 9-13 at 2–3 (docket of DUI case).

Vegas City Attorney's Office received Likins's blood-draw results, which indicated that alcohol was "Not Detected" in his blood.[18]  Nonetheless, the City Attorney's office arraigned Likins a week after receiving those results.[19]  Likins's drug test also subsequently came back "negative."[20]  Approximately four months after Likins's arraignment, the prosecutor asked at a pretrial hearing to dismiss the case against him without prejudice, and the court granted that request.[21]

**C.    Likins sues on allegations of evidence fabrication.**

Likins filed this lawsuit in Nevada state court against the North Las Vegas Police Department, the City of North Las Vegas, and Officers Herrera and Azcunaga under 42 U.S.C. § 1983,[22] claiming that they fabricated the DUI evidence in violation of the Fourteenth Amendment and that the City of North Las Vegas maintains several unconstitutional customs and practices such as allowing officers and prosecutors to get away with making and using fabricated evidence.[23]  Likins also asserts state-law claims for malicious prosecution, negligence, false arrest, and a deprivation of substantive due process in violation of Article 1 § 8 of the Nevada Constitution.[24]  The defendants removed this case from state court based on federal-question jurisdiction.[25]

---

[18] ECF No. 9-14 at 1 (email containing blood-draw results); ECF No. 9-15 at 2 (BAC results).

[19] ECF No. 9-13 at 2–3.

[20] ECF No. 9-16 at 5.

[21] ECF No. 9-13 at 2.

[22] *See* ECF No. 1 at 11–30.

[23] *Id.* at 18–24.

[24] *Id.* at 24–29.

[25] *Id.* at 1–3.

4

**D.       The defendants seek summary judgment on all claims.**

The defendants now move for summary judgment on all of Likins's claims.[26]  They argue that the officers' bodycam footage supports their description of him as having slurred speech and bloodshot eyes, along with the other driver's description of him as stumbling.[27]  And even if Officer Herrera mistakenly believed that he smelled alcohol on Likins, that mistake falls well short of showing that the officers deliberately fabricated evidence.[28]  Defendants also contend that Likins can't establish causation because the purportedly fabricated evidence did not cause his arrest—his poor performance on several field-sobriety tests did.[29]  They also ask for summary judgment on Likins's policy-and-practice claim because he hasn't identified an unconstitutional policy or other incidents of policy violations, as is necessary for a § 1983 claim against a municipality.[30]

Likins counters that he provided evidence to support fabrication or that at least creates questions of material fact to survive summary judgment.[31]  He submits that Officer Azcunaga admits in his discovery responses that he did not smell alcohol and Officer Herrera couldn't have smelled alcohol based on Likins's clean blood-draw test.[32]  Likins also argues that the officers' description of him in the police report is belied by the bodycam footage, and the fact that they muted their body cameras before arresting him is circumstantial evidence of an improper

---

[26] *See generally* ECF No. 9.

[27] *Id.* at 19; ECF No. 14 at 6–7.

[28] ECF No. 9 at 17.

[29] *Id.* at 19–20.

[30] *Id.* at 24–25.

[31] ECF No. 13 at 11.

[32] *Id.* at 1–3, 11–13.

motive.[33]  To support his policy-or-practice claim, Likins offers three policies or practices that he contends are unconstitutional: the police department does not sufficiently discipline its officers, the city permits prosecutors to pursue cases without reading the file, and the prosecutor's office is chronically understaffed.[34]

### Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[35]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence showing the absence of a genuine material factual issue.[36]  The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[37]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[38]

---

[33] *Id.* at 3–6.

[34] The parties also raise several arguments regarding the state-law claims and qualified immunity. ECF No. 9 at 22–31.  I do not reach those arguments because, as explained *infra*, I remand the state-law claims to state court and defendants are entitled to summary judgment on the federal claims for reasons other than qualified immunity.

[35] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[36] *Id.* at 323.

[37] *Id.* at 322.

[38] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

**A.     While questions of material fact preclude summary judgment on whether the alcohol-odor evidence was fabricated, Likins has failed to show causation.**

The parties agree that Likins's substantive due-process claim only seeks to vindicate his right not to be subject to criminal charges based on false evidence deliberately manufactured by the government.[39]  Proving a fabricated-evidence claim requires showing that (1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty.[40]

> ***1.     Defendants are entitled to summary judgment on their description of the event, but questions of material fact remain on whether the officers deliberately fabricated the alcohol-odor evidence.***

The first element of this claim requires proving that the defendants fabricated evidence and did so deliberately.  A plaintiff may use direct evidence to prove that an officer deliberately fabricated evidence.[41]  A plaintiff may also divine an officer's improper intent from circumstantial evidence.[42]  But "at a minimum," this circumstantial evidence must show that the officer continued investigating the suspect after he knew that the suspect was innocent, or that the officer was deliberately indifferent to the suspect's innocence.[43]  This is a "stringent" test,[44] "otherwise, every acquittal could spawn a fabrication claim,"[45]  So "it will be an unusual case in

---

[39] *See Deveraux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001); *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) ("The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official."); ECF No. 13 at 11.

[40] *Spencer*, 857 F.3d at 798.

[41] *Caldwell v. City & Cnty. of S.F.*, 889 F.3d 1105, 1112 (9th Cir. 2018).

[42] *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).

[43] *Devereaux*, 263 F.3d at 1076.

[44] *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).

[45] *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023).

which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence."[46]

Likins offers two items of evidence that he contends the officers deliberately fabricated: (1) they made up that they smelled alcohol[47] and (2) they misrepresented Likins's conduct and appearance during their interaction, claiming he was stumbling, had bloodshot eyes, and was slurring his words.[48]  He also contends that the fact that the officers muted their body cameras and had an unrecorded discussion before arresting him is evidence that they were conspiring about how to arrest Likins without probable cause.[49]

As to his first theory, Likins posits that Officer Azcunga fabricated the alcohol scent because the police report states that the officers smelled alcohol on Likins, but Officer Azcunga later admitted in discovery that he did not.[50]  Likins also contends that it was a "scientific impossibility" that Officer Herrera believed Likins smelled of alcohol because the later blood-draw test showed that Likins had no alcohol in his system.[51]  Defendants counter that even if the officers were incorrect about the smell, mistakes are not fabrications,[52] Officer Azcunaga's

---

[46] *Id.*

[47] ECF No. 13 at 3.

[48] *Id.* at 12–13.

[49] *Id.* at 8.

[50] *Id.* at 5.  Likins also contends that Officer Azcunaga telling him that he could move his truck onto the shoulder shows that Officer Azcunaga did not suspect he was drunk.  See ECF No. 10 at 5:30–6:15 (Azcunaga BWC).  That request, which happened very early into the incident, does not negate the later suspicion the Officer Azcunaga and Herrara developed.  *See, e.g.*, *United States v. Medina-Gasca*, 739 F.2d 1451, 1453 (9th Cir. 1984) (noting a stop "may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop.").

[51] ECF No. 13 at 9.

[52] ECF No. 9 at 17.

discovery responses are a red herring because Officer Herrera believed Likins smelled of alcohol after speaking with him, and the law imputes knowledge from one officer to another.[53]

Questions of material fact preclude summary judgment on the alcohol-odor evidence when viewed in the light most favorable to Likins.  It is true that knowledge is imputed between officers and Officer Herrera told Officer Azcunga early in the incident that Likins smelled of alcohol,[54] so Officer Azcunga's discovery responses alone do not create a question of material fact.  But as courts have recognized in the probable-cause context, "a subsequent 0.00% blood-alcohol-test result 'casts doubt on' [claims that a suspect smelled of alcohol] and may create a question of the officer's credibility that must be resolved by a jury."[55]  While officers do not have to ensure "error-free result[s]" in their investigations,[56] whether Officer Herrera actually believed he smelled alcohol ultimately turns on witness credibility, which can't be resolved on summary judgment.

But the bodycam footage forecloses Likins's second factual theory that the officers fabricated their descriptions of him in the police report.  The parties offer two very different characterizations of the bodycam footage: Likins contends that the footage shows him "walking

---

[53] ECF No. 14 at 4–6.

[54] ECF No. 10 at 10:45–11:37 (Azcunaga BWC); *Illinois v. Andreas*, 463 U.S. 765, 771 n.5 (1983) ("[W]here law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all."); *United States v. Jensen*, 425 F.3d 698, 704–05 (9th Cir. 2005) (quoting *United States v. Valez*, 796 F.2d 24, 28 (2d Cir.1986)) ("The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superior or associates.").

[55] *Larriett v. Michigan Dep't of State Police*, 2026 WL 396626, at *8 (6th Cir. Feb. 12, 2026); *Miller v. Sanilac Cnty.*, 606 F.3d 240, 248 (6th Cir. 2010) ("However, the fact that Miller's blood alcohol was found to be 0.00% casts doubt on Deputy Wagester's claims that Miller smelled of alcohol and failed the field sobriety tests.").

[56] *Devereaux*, 263 F.3d at 1077.

normally without any stumbling or balance issues, speaking coherently and clearly throughout the entire incident,"[57] while the officers view it as supporting their description of him slurring his words and having bloodshot eyes.[58] Defendants also point out that the description of Likins stumbling comes from the other driver and not them, but it is nonetheless a reasonable interpretation.[59] Likins contends that all of these descriptions are fabricated.[60]

As an initial matter, the police report indeed attributes the observation that Likins was "stumbling and having difficulty maintaining his balance" to the other driver, not the officers.[61] But even if it were attributable to the officers, Likins has not shown that the descriptions of him "stumbling" and "slurr[ing]" words were potentially fabricated, rather than just a permissible characterization of his performance.[62] Evidence is not fabricated just because it is disputed.[63] Even "careless or inaccurate" descriptions don't turn them into fabrications.[64] Reasonable minds might differ on whether Likins was stumbling or slurring his words or to what degree. But the bodycam footage supports the notion that a reasonable officer could have thought Likins was slurring his words or stumbling during the field-sobriety tests. Even if a jury ultimately

---

[57] ECF No. 12 at 2.

[58] ECF No. 14 at 6–7.

[59] *Id.*

[60] ECF No. 13 at 2–3.

[61] ECF No. 9-6 at 6–7 (Police Report). Likins has not suggested that the officers fabricated this interview. *See generally* ECF No. 13.

[62] *Richards v. Cnty. of San Bernardino*, 2022 WL 2292830, at *1 (9th Cir. June 24, 2022) (unpublished) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014) ("[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong"); *Mervilus*, 73 F.4th at 194 ("Evidence is not fabricated if it "is incorrect or simply disputed.").

[63] *Richards*, 2022 WL 2292830, at *1 (quoting *Halsey*, 750 F.3d at 295).

[64] *Gausvik*, 345 F.3d at 817.

determines that those descriptions were incorrect, a reasonable jury could not conclude that their descriptions were anything more than that. Nothing suggests that the officers conclusively knew of Likins's innocence based on his appearance and conduct and continued pursuing the investigation regardless. So Likins does not meet the "stringent" bar to show that the officer's characterization of Likins as stumbling, slurring words, and having bloodshot eyes was deliberately fabricated.[65]

Likins's final theory focuses on the fact that the officers muted their body cameras to talk before arresting him.[66] According to Likins, this pre-arrest muting "strongly suggests they were coordinating their fabricated narrative and deciding how to justify an arrest they knew lacked probable cause."[67] But that conclusion is entirely speculative, and "[i]t is well-settled that mere speculation cannot be substituted for proof."[68] So the evidence of camera muting also fails to create a genuine dispute of whether evidence was fabricated. The only factual theory that leaves a genuine issue is whether any officer actually believed he smelled alcohol on Likins.

### 2.   *Regardless, the record does not support causation because the officers had probable cause to arrest even without the purportedly fabricated evidence.*

Even if questions of fact preclude summary judgment on whether the alcohol-odor evidence was fabricated, the defendants are entitled to summary judgment on his Fourteenth Amendment claim because Likins has not shown that this relatively small piece of the probable-cause puzzle was the proximate cause of his arrest, detainment, or prosecution. "To establish the

---

[65] Likins's eyes are not discernable in the video. But Likins bears the burden of showing fabrication, and he has offered no evidence to prove that the officer fabricated that evidence.

[66] ECF No. 10 at 24:13-29:21(Azcunaga BWC); ECF No. 10 at 30:50-35:30 (Herrera BWC).

[67] ECF No. 13 at 9.

[68] *Woods v. United States*, 724 F.2d 1444, 1451 (9th Cir. 1984).

11

second element of causation, the plaintiff must show that (a) the act was the cause in fact of the deprivation of liberty, meaning that the injury would not have occurred in the absence of the conduct; and (b) the act was the "proximate cause" or "legal cause" of the injury, meaning that the injury is of a type that a reasonable person would see as a likely result of the conduct in question."[69] "While proximate or legal causation normally presents an issue for the trier of fact to resolve," "federal law recognize[s] that [when] causation cannot reasonably be established under the facts . . . the question of proximate cause is one for the court."[70]

Defendants contend that the alcohol-odor evidence did not cause Likins's arrest because probable cause independently existed from his poor performance on the field-sobriety tests.[71] In his response, Likins focuses on cause in fact or "but for" causation but not proximate causation, contending that there is causation because the purported smell of alcohol led the officers to perform the field-sobriety tests.[72]

Probable cause is not the same as—or necessarily dispositive of—proximate causation in a fabricated-evidence case,[73] but the Ninth Circuit has relied on the probable-cause analysis to

---

[69] *Spencer*, 857 F.3d at 798.

[70] *Tokai Bank v. Chicago Title Ins. Co.*, 125 F.3d 859 (9th Cir. 1997).

[71] ECF No. 9 at 19–20.

[72] ECF No. 13 at 13.

[73] *Spencer*, 857 F.3d at 801–02; *Hoyos v. City of New York*, 650 F. App'x 801, 803 (2d Cir. 2016) ("[T]he type of causation at issue in a fabrication-of-evidence claim is proximate cause, rather than probable cause . . . [t]hus, the district court's statement that independent probable cause rules out the possibility that fabricated evidence proximately caused the deprivations stemming from his prosecution is not, as a general matter, correct." (cleaned up)). For example, "even if independent evidence establishes probable cause against a suspect, it would still be unlawful for law-enforcement officers to fabricate evidence in order to strengthen the case against that suspect." *Mills v. Barnard*, 869 F.3d 473, 480 (6th Cir. 2017).

help determine if fabricated evidence proximately caused a deprivation of liberty.[74]  Probable cause is an objective standard and it exists when, "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the suspect] had committed a crime."[75]  Probable cause "is not a high bar,"[76] and the plaintiff bears the burden of proving causation[77] and the absence of probable cause.[78]

Ample evidence outside of the alcohol odor supported Likins's arrest.  There is no genuine dispute that Likins struggled with multiple field-sobriety tests:[79] he showed multiple signs of impairment under the horizontal-gaze-nystagmus test, the walk-and-turn test, and the

---

[74] *See McSherry v. City of Long Beach*, 584 F.3d 1129, 1142 (9th Cir. 2009) (finding fabricated evidence did not cause prosecution when there was a separate basis for probable cause and fabricated evidence did not taint decision making); *see also Alvarez v. City of San Bernardino*, 414 F. App'x 964, 966 (9th Cir. 2011) ("A reasonable jury could not find that Plaintiffs were subjected to criminal charges on the basis of fabricated or coerced evidence . . . [a]ssuming as true that Cisneros's statement was fabricated, the criminal complaint did not rely on Cisneros's statement, and probable cause existed independent of her statement."); *Tomer v. Gates*, 811 F.2d 1240, 1242 (9th Cir. 1987) ("There is no assertion that the affidavit filed by Lombardo in support of the search warrant was based exclusively on the alleged "fabricated evidence." Probable cause could be established on the basis of other assertions in the supporting affidavit, not including the "found evidence call" incident.").

[75] *See United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986).

[76] *Kaley v. United States*, 571 U.S. 320, 338 (2014).

[77] *Spencer*, 857 F.3d at 798.

[78] *Beck v. City of Upland*, 527 F.3d 853, 869 n.18 (9th Cir. 2008) ("[T]he plaintiff always carries the initial burden of showing the absence of probable cause"); *Gilker v. Baker*, 576 F.2d 245 (9th Cir. 1978).

[79] Likins does take issue with how the officers administered the test, saying that, "[i]f the officers cannot properly administer the tests, their interpretations of the results cannot establish probable cause." ECF No. 13 at 8.  Although Likins's brief doesn't develop this idea, Likins's expert report does attack the officers' administration of the tests.  And his brief offers explanations for his poor performance. *Id.*  But even if that were true, that does not make the alcohol-odor evidence the cause of the arrest, rather than the purportedly improper tests.  The proximate cause analysis here is also not synonymous with probable cause. *Spencer*, 857 F.3d at 801–02.

13

one-leg-stand test.[80]  And based on the bodycam footage, a reasonable officer also could believe that Likins's speech was slurred, he was struggling with balance, and he was chewing gum to conceal the scent of alcohol.[81]  Even the other driver reported to the officers that Likins was stumbling and having balance issues.[82]

The Ninth Circuit has found that facts like these are sufficient to establish probable cause.[83]  For example, defendants cite to the unpublished Ninth Circuit case of *Rehms v. Post Falls Police Dep't*, in which the Ninth Circuit affirmed a finding of probable cause for a DUI arrest because the defendant's speech was slurred, she was unsteady on her feet, and she had difficulty performing some of the routine field-sobriety tests.[84]  So this pile of other evidence of Likins's impairment more than supported probable cause, independent of the alcohol-odor evidence.

Likins also provides no evidence that the officers relied on the alcohol-odor evidence to the exclusion of this other evidence.  Besides providing an independent basis for probable cause, the officers also appeared to have placed greater weight on the other evidence.  For example, the officers told Likins that they wanted him to undergo field-sobriety tests because of his "bloodshot eyes" and "slurred speech," and not because he smelled of alcohol.[85]  They allowed him to continue with field-sobriety tests after telling him that they thought he smelled of alcohol

---

[80] ECF No. 9-6 at 6–7.

[81] *Charron v. Cnty. of York*, 49 F.4th 608, 618 (1st Cir. 2022) ("[T]he availability of alternative inferences does not prevent a finding of probable cause so long as the inference upon which the officer relies is reasonable.").

[82] ECF No. 9-6 at 6–7

[83] *United States v. Stanton*, 501 F.3d 1093, 1101 (9th Cir. 2007).

[84] *Rehms v. Post Falls Police Dep't*, 2024 WL 5200173, at *1 (9th Cir. Dec. 23, 2024) (unpublished).

[85] ECF No. 10 at 14:00–14:25 (Azcunaga BWC).

to negate their suspicion.[86]  And they only arrested him after he did not correctly follow instructions for counting and couldn't hold up his leg for more than a few seconds on the one-leg-stand test.[87]  So, on this record, Likins cannot establish that the smell of alcohol was the legal proximate cause of his arrest and prosecution, and the defendants are entitled to summary judgment on his Fourteenth Amendment claim.

**B.      Likins failed to identify a policy, practice, or custom needed for a *Monell* claim.**

Municipalities like the City of North Las Vegas and its police department cannot be held liable under § 1983 for the acts of an employee based only on a respondeat superior theory.[88]  Instead, the United States Supreme Court's decision in *Monell v. Dep't of Social Services* holds that a plaintiff may pursue a constitutional-tort claim against a municipality only if the municipality's policy, custom, or practice was deliberately indifferent to the plaintiff's constitutional right and was the moving force behind a constitutional violation.[89]  If a municipality maintains an adequate policy, a *Monell* claim is cognizable only if the municipality

---

[86] *See id.* at 26:00–28:25.

[87] *Id.* at 28:18–31:55; ECF No. 10 at 32:59–33:05 (Herrara BWC); ECF No. 9-6 at 6–7.

[88] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).

[89] *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1154 (9th Cir. 2021); *Monell*, 436 U.S. at 691; *Oviatt By and Through Waugh v. Pierce*, 954 F.2d 1470, 1474 (9th Cir. 1992).  A *Monell* claim requires the plaintiff to show "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Id.*

15

also maintains a "custom or practice of violating [that] policy."[90]  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."[91]

Likins offers three purportedly unconstitutional policies or practices: (1) the police department does not sufficiently discipline its officers for violating body-worn camera policies or making false statements, (2) the city permits prosecutors to pursue cases without reviewing case files, and (3) the prosecutor's office is chronically understaffed such that the prosecutors cannot read their cases.  None of these are explicit policies, so Likins must show these are instead customs or practices.  The only specific instances that he points to are Metro not disciplining Officers Azcunga and Herrera in this particular case, and the prosecutor pursuing the DUI charge against him.[92]  Even if these acts violated a policy—a point that is vigorously contested—they are just singular violations, which are insufficient to prove a custom or practice of policy violations as a matter of law.[93]  And Likins identifies no evidence to support his understaffing theory.  So I grant defendants' summary judgment on Likins's *Monell* claim because this record cannot support it factually.

### C.      The court declines to exercise supplemental jurisdiction over Likins's remaining state-law claims.

The resolution of Likins's federal civil-rights claims leaves only his state-law claims for malicious prosecution, false imprisonment, negligence, and violations of the Nevada Constitution.  Because this lawsuit was removed to federal court based on federal-question

---

[90] *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 n. 10 (9th Cir. 2016) ("[O]therwise an entity, no matter how flagrant its actual routine practices, always could avoid liability by pointing to a pristine set of policies.").

[91] *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

[92] ECF No. 13 at 14–16.

[93] *Tuttle*, 471 U.S. at 823–24.

jurisdiction, this court is exercising supplemental jurisdiction over these state-law claims.[94] Federal courts are courts of limited jurisdiction, and they maintain supplemental jurisdiction over state-law claims that "are so related to claims in the action" that they form the same case or controversy with the claims over which the court has jurisdiction.[95] But once a plaintiff's federal claims are gone, the court may decline to exercise supplemental jurisdiction over the remaining state-law claims.[96]

Because I grant summary judgment in favor of the defendants on Likins's federal claims, and several of the state-law claims raise novel or unresolved issues of state law,[97] I decline to continue to exercise supplemental jurisdiction over Likins's state-law claims.[98] So I remand them back to state court under 28 U.S.C. § 1367.

---

[94] Although there is diversity of citizenship because Likins is a citizen of California and defendants are citizens of Nevada, ECF No. 1, the complaint only prays for in excess of $30,000 in damages plus punitive damages. *Id.* A plaintiff properly pleads diversity jurisdiction if he alleges diversity of citizenship and an amount in controversy exceeding $75,000. *See, e.g.*, *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1173 (9th Cir. 2025) (citing 28 U.S.C. § 1332(a)). So Likins's complaint doesn't allege the amount in controversy necessary for diversity jurisdiction. *See Matheson v. Progressive Specialty Ins. Co.* 319 F.3d 1089, 1090–91 (9th Cir. 2003) (finding that a request in the complaint for an award "in excess" of $30,000 for economic loss, emotional distress, and punitive damages did not show an amount in controversy of over $75,000). The in-state defendant rule also likely bars removal in this case based on diversity jurisdiction. *Loc. Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Const. Co.*, 846 F.2d 1213, 1215 (9th Cir.) ("[F]or diversity removal to be proper, none of the defendants may be a citizen of the state in which the action is brought.").

[95] 28 U.S.C. § 1367(a).

[96] 28 U.S.C. § 1367(c)(4); see *Harrell v. 20th Century Ins. Co.*, 934 F.2d 203, 205 (9th Cir. 1991) ("[I]t is generally preferable for a district court to remand remaining pendent claims to state court.").

[97] *See, e.g.*, *LaPena v. Las Vegas Metro. Police Dep't*, 2024 WL 1241323, at *8 (D. Nev. Mar. 22, 2024) ("The Nevada Supreme Court has yet to define 'malice' in the context of malicious prosecution.").

[98] *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 715 (9th Cir. 2009) (finding decision to not exercise supplemental jurisdiction was "assuredly reasonable" when state-law "claims involved complex and novel questions of state law" and "would involve

17

## Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment **[ECF No. 9] is GRANTED in part**. The defendants are entitled to summary judgment on Likins's first cause of action (Violation of the Fourteenth Amendment) and second cause of action (Unconstitutional Custom or Policy). The remainder of the motion is denied without prejudice. So the Clerk of Court is directed to **ENTER PARTIAL FINAL JUDGMENT** in favor of the defendants on those federal claims only and then **REMAND** the state-law claims back to the Eighth Judicial District Court for Clark County, Nevada, Department 16, Case No. A-24-907002-C, along with a copy of this order and a copy of the docket sheet for this case, and **CLOSE THIS CASE**. This case returns to state court with no motions pending.

_____
U.S. District Judge Jennifer A. Dorsey
March 31, 2026

---

statutory construction or interpretation and state case law analysis that should be resolved by a state court" (cleaned up)); *Bad Frog Brewery, Inc. v. New York State Liquor Auth.*, 134 F.3d 87, 102 (2d Cir. 1998) ("We think that this is an appropriate case for declining to exercise supplemental jurisdiction over these claims in view of the numerous novel and complex issues of state law they raise.").

18